UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
TINY TOT SPORTS, INC.,                   :     04 CIV. 4487 (DLC)
                                         :
                Plaintiff,               :
                                         :     OPINION & ORDER
         -v-                             :
                                         :
SPORTY BABY, LLC and SMALL FRY           :
PRODUCTIONS,                             :
                                         :
                Defendants.              :
                                         :
-----------------------------------------X

Appearances

For plaintiff:
Gregory P. Gulia
Christina S. Kim
Duane Morris LLP
380 Lexington Avenue
New York, New York 10168

William F. Harris
968 Postal Road, Suite 200
Allentown, Pennsylvania 18109

For defendants:
Steven M. Kaplan
Kaplan & Levenson LLP
630 Third Avenue
New York, New York 10017

DENISE COTE, District Judge:

Plaintiff Tiny Tot Sports, Inc. ("Tiny Tot") sells videos intended to introduce toddlers to sports under the marks BABY BASEBALL, BABY SOCCER, BABY GOLF, BABY FOOTBALL, BABY HOCKEY, and BABY BASKETBALL (collectively, the "Baby Marks"). Defendants Sporty Baby LLC ("Sporty Baby") and Small Fry Productions ("Small Fry") have prepared to market their own videos using the Baby Marks, and Sporty Baby filed trademark registration applications for five of the six marks. This Opinion considers defendants'

motion for summary judgment and to vacate the Temporary Restraining Order (the "TRO") issued by this Court on February 17, 2005. In addition, it considers plaintiff's motion for sanctions and an order of civil contempt, damages, and attorney's fees.

For the reasons described below, defendants' motion for summary judgment is granted. Plaintiff's motion for sanctions is granted in part.[1]

Background

The following facts are undisputed or are as shown by plaintiff, unless otherwise indicated.[2] Tiny Tot sells and markets athletic-themed videos for children using the Baby Marks. According to a March 1, 2005 press release (the "March 2005 Press Release") submitted by Tiny Tot,

> [the] 30-minute videos . . . introduce toddlers to the respective sports by using whimsical sports characters and bouncy music, as well as images of colorful equipment and the Tiny Tot Sports Team of 30 young children doing their best to score, punt, pass, shoot, bat, putt, kick and just have fun. All of the videos stress and reinforce the importance of teamwork,

---

[1] Tiny Tot has also moved to amend its complaint to add a new defendant, Brainy Baby, which it alleges to be under the same management or control as Sporty Baby. Counsel for defendants confirmed in a conference of May 24, 2005 that the two entities are indeed affiliated in some manner. Given that this Opinion grants judgment for defendants on all of plaintiff's claims, amendment would be futile, and the motion is denied.

[2] In opposition to defendants' summary judgment motion, the plaintiff offers the affidavits of two attorneys involved with the case, Gregory P. Gulia and Christina S. Kim. Defendants have submitted an affidavit from Steven Kaplan, also an attorney involved with the case, and corresponding exhibits.

sharing, friendship, and the benefits of sports. According to the same press release, more than 1300 retail outlets have agreed to carry Tiny Tot's videos.

On February 20, 2004, Sporty Baby filed "intent to use" trademark applications with the U.S. Patent and Trademark Office ("PTO") for BABY BASEBALL, BABY SOCCER, BABY GOLF, BABY FOOTBALL, and BABY BASKETBALL, five of the six Baby Marks. Neither party presents evidence that Sporty Baby ever sold videos using these marks, and counsel for Sporty Baby represented to the Court in a May 25, 2005 conference that no sales have occurred. Sporty Baby received adverse preliminary determinations by the PTO examiner on the basis that the marks were merely descriptive. It now claims to have abandoned those applications, although plaintiff disputes that the applications have indeed been officially abandoned.

Tiny Tot filed its own trademark applications for all six Baby Marks on March 25, 2004.[3] Tiny Tot's trademark applications appear to contain stylized design logos, not standard word marks. The preliminary determinations issued to Tiny Tot by the PTO examiners were similarly adverse, also on the basis that the marks were descriptive. The BABY SOCCER mark, however, was given reconsideration at plaintiff's behest and was granted conditional preliminary approval on April 7, 2005, although action was suspended pending resolution of the potential conflict presented

---

[3] As noted in the PTO Actions for Tiny Tot's Baby Marks, Tiny Tot did not specify whether it was applying to register the marks on an "in use" or an "intent to use" basis.

by Sporty Baby's prior application for the same mark.[4]

Tiny Tot filed this action against Sporty Baby and Small Fry on June 15, 2004, alleging unfair competition under Lanham Act Section 43(a), 15 U.S.C. § 1125(a)(1)(A); fraudulent trademark registration under 15 U.S.C. § 1120; and unfair or deceptive trade practices under N.Y. Gen. Bus. L. § 349(a). Tiny Tot seeks a permanent injunction barring defendants from using the Baby Marks, as well as compensatory and punitive damages. Following a conference with the parties, on August 27, 2004, this Court issued a Pretrial Scheduling Order specifying that fact discovery was to close on February 25, 2005. On February 17, 2005, Tiny Tot requested and was granted a TRO barring defendants and parties affiliated with them from using the Baby Marks and, specifically, from distributing, promoting, or selling videos using the Baby Marks at the American International Toy Fair (the "Toy Fair") on February 20 to 23, 2005, which a Tiny Tot representative described in his declaration as "the biggest marketing event of the year in [the toy] industry."[5] On the date

---

[4] Preliminary approval of the stylized Baby Soccer mark was conditioned as follows: "Upon reconsideration, the examining attorney requests that applicant must disclaim the descriptive wording 'SOCCER' apart from the mark as shown."
In the May 6, 2005 Declaration of Christina S. Kim accompanying plaintiff's reply memorandum in support of its motion for sanctions, an order of civil contempt, damages, and attorneys' fees, counsel for plaintiff additionally represents that "[t]he PTO has reconsidered and withdrawn its initial descriptiveness refusals with respect to all of plaintiff's trademark applications for its Baby Marks." Plaintiff has provided no other evidence to support this representation.

[5] At the February 17, 2005 conference at which the Court issued the TRO, the discussion focused on plaintiff's priority of

4

the TRO was issued, the parties jointly agreed to a schedule, issued in an Order of February 18, 2005, setting a preliminary injunction hearing for May 20, 2005.

Defendants filed a summary judgment motion on March 25, 2005; Tiny Tot filed motions for leave to amend the complaint and for sanctions, an order of civil contempt, damages, and attorneys' fees on April 1, 2005. Tiny Tot agreed in early May to withdraw its motion for a preliminary injunction so that the matter could proceed more swiftly toward a final determination on the merits. On May 7, 2005, Tiny Tot filed a motion to reopen discovery, which was denied, subject to rulings the Court made at a May 24, 2005 conference.

Discussion

I. Defendants' Summary Judgment Motion

In their motion for summary judgment, defendants argue that the Baby Marks are not protectable under Lanham Act Section 43(a) because they are merely descriptive and lack the secondary meaning necessary to render descriptive marks protectable. They also argue that plaintiff's claim under 15 U.S.C. § 1120 is unripe and moot because the statute applies only to defendants

---

use of the Baby Marks and the defendants' bad faith in filing trademark registration applications for those marks, including its alleged failure to disclose to the PTO Tiny Tot's priority of use. The arguments presented in the summary judgment motion considered in this Opinion were not raised by counsel for the defendants. The plaintiff did not disclose that the PTO had denied its applications to register its marks in the fall of 2004 on the ground that they were "merely descriptive."

5

that have actually obtained trademark registration. Finally, defendants argue that no claim can be sustained under N.Y. Gen. Bus. L. § 349 because plaintiff has not made a showing of harm to consumers at large.

A court cannot grant summary judgment unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. In making its determination, the court must view all facts in the light most favorable to the non-moving party. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that it is entitled to summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed. R. Civ. P.

A. Distinctiveness of the Baby Marks under 15 U.S.C. § 1125(a)

Defendants argue that the Baby Marks are not protectable under Lanham Act Section 43(a) because they are descriptive rather than suggestive and the plaintiffs have not shown that the marks have acquired secondary meaning. Section 43(a) imposes civil liability on

> [a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
>     (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship,

or approval of his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125(a)(1)(A). To succeed on a Section 43(a) claim for trademark infringement,[6] a plaintiff must establish both (1) that its trademark is entitled to protection and (2) that the defendant's mark is likely to confuse consumers as to the origin or sponsorship of its product. Virgin Enters., Inc. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003).

To establish trademark infringement under Section 43(a), a trademark need not be registered, but it need be registrable. See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210 (2000) ("[T]he general principles qualifying a mark for registration under § 2 of the Lanham Act [governing trademark registration] are for the most part applicable in determining

---

[6]The careful reader will note that plaintiff's first cause of action was for unfair competition, not trademark infringement. To succeed on an unfair competition claim under Lanham Act Section 43(a), a plaintiff must establish "1) an association of origin by the consumer between the mark and the first user, that is, secondary meaning; and 2) a likelihood of consumer confusion when the mark is applied to the second user's good." Genessee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 150 (2d Cir. 1997) (citation omitted).
In their summary judgment motion, defendants recite the trademark infringement elements rather than the unfair competition elements, and plaintiff responds by arguing that the Baby Marks are suggestive -- that is, inherently distinctive -- without putting forth any evidence to establish that the marks have acquired secondary meaning, the first element of an unfair competition claim. The plaintiff has chosen to hang its hat on the inherent distinctiveness argument, and this Opinion will decide the motion accordingly. In any event, while a plaintiff with a descriptive mark may be able to proceed on a claim of unfair competition, to do so, it must show the existence of secondary meaning under the first prong of the test set forth in Genessee. The plaintiff does not suggest that its Baby Marks have acquired distinctiveness in the marketplace.

whether an unregistered mark is entitled to protection under § 43(a)." (citation omitted)). "The strength of a trademark in the marketplace and the degree of protection it is entitled to are categorized by the degree of the mark's distinctiveness in the following ascending order: generic, descriptive, suggestive, and arbitrary or fanciful." Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993) (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976)). Generic marks, which consist of words "that identify the type or species of goods or services to which they apply" are not entitled to any protection against infringement. TCPIP Holding Co., Inc. v. Haar Communications, Inc., 244 F.3d 88, 93 (2d Cir. 2001). With respect to the remaining categories, "trademark law accords broader protection to marks that serve exclusively as identifiers and lesser protection where a grant of exclusiveness would tend to diminish the access of others to the full range of discourse relating to their goods." Virgin, 335 F.3d at 147-48. A suggestive mark, "as might be expected, suggests the product, though it may take imagination to grasp the nature of the product," Gruner, 991 F.2d at 1076, whereas a descriptive mark "forthwith conveys an immediate idea of the ingredients, qualities, or characteristics of the goods," Bernard v. Commerce Drug Co., 964 F.2d 1338, 1341 (2d Cir. 1992) (quoting Abercrombie, 537 F.2d at 11). Similarly, a mark may be descriptive "if it describes the purpose or utility of the product." Id. A mark must be considered in relation to the

8

goods it identifies when the category determination is made. For example, "[t]he word 'apple' would be . . . suggestive when used in 'Apple-A-Day' on vitamin tablets, [and] descriptive when used in 'Tomapple' for combination tomato-apple juice." Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1041 (2d Cir. 1992) (quoting 1 J.T. McCarthy, Trademarks and Unfair Competition § 11:22, at 498-99 (2d ed. 1984)).

A descriptive mark may be protected only if it has acquired secondary meaning, while a suggestive mark is considered inherently distinctive and may be protected without a showing of secondary meaning. Gruner, 991 F.2d at 1076. Secondary meaning is also known as "acquired distinctiveness." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992). It "attaches when the name and the business have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning as a word identifying that business." Time, Inc. v. Petersen Publishing Co., 173 F.3d 113, 117 (2d Cir. 1999) (citation omitted). Tiny Tot does argue that its Baby Marks have acquired secondary meaning. Whether the Baby Marks are protectable, then, depends entirely on whether they are descriptive or suggestive.

The Baby Marks are descriptive as a matter of law. Plaintiff's "Baby Golf" video, for example, is a video that introduces babies to the sport of golf. See March 2005 Press Release ("Baby Baseball, Baby Basketball, Baby Football, Baby Soccer, and Baby Golf . . . introduce toddlers to the respective

9

sports by using whimsical sports characters and bouncy music . . . ."). Contrary to plaintiff's arguments, no leap of imagination is necessary to discern the general contents or purpose of the videos identified by the Baby Marks. Each Baby Mark is in essence a concise description of the contents or purpose of the corresponding video.

Even though the fact that the videos "contain characters, scenes, stories, words and music" is not apparent from the Baby Marks, as the U.S. Court of Appeals for the Second Circuit noted in a case where the mark in question described "the general use . . . to which the product or service is put," Bernard, 964 F.2d at 1341, "it is not necessary . . . that the term also describe the specific . . . characteristics of the product . . . in order for the term to be descriptive." The Bernard court held that "Arthriticare" was a descriptive mark for a topical arthritis gel. See id. In another Second Circuit case, which involved the mark "Children's Place" for a clothing store, the court noted that "[a] store that specializes in children's merchandise is a children's place -- a place that sells children's merchandise, a place to buy what children need. The use of the words "children's place" as a mark for such a store is thus highly descriptive." TCPIP, 244 F.3d at 93. In Papercutter, Inc. v. Fay's Drug Co., Inc., 900 F.2d 558, 563 (2d Cir. 1990), the court held "Papercutter" to be a descriptive mark for a corporation selling paper designs and ornaments. As these examples indicate, it is not necessary that a mark evoke in a customer's mind a

10

precise vision of the product it identifies, but simply that the mark convey "an immediate idea of some characteristic or attribute" of the product. Bernard, 964 F.2d at 1341 (citation omitted). The defendants' motion for summary judgment on the Lanham Act Section 43(a) claim is accordingly granted.[7]

B.   The Fraudulent Registration Claim Under 15 U.S.C. § 1120

Defendants argue that plaintiff's claim under the fraudulent trademark registration provision is unripe and moot. The statute provides:

---

[7] Defendants also cite an unpublished case from the U.S. Court of Appeals for the Federal Circuit, In re Daniel Dayan, 61 Fed. Appx. 695 (Fed. Cir. 2003), in which the court ruled that the Trademark Trial and Appeal Board did not err in denying a trademark application for a "Baby Golf" mark used to identify children' shirts and other clothing. As here, the Dayan court found that "Baby Golf" was merely descriptive. While tending to support the analysis in this Opinion, Dayan relied partly on the fact that there was an item of clothing commonly referred to as a "golf shirt." See id. at 696-97. The transferability of its holding would thus be limited even if the case could be relied on as persuasive authority.

Both parties also devote large sections of their briefs to the import of the PTO determinations regarding the Baby Marks. The preliminary determinations of the PTO examiner have been given little weight in this analysis. While final determinations by the PTO and the Trademark Trial and Appeal Board are clearly to be accorded "great weight," Murphy Door Bed Co., Inc. v. Interior Sleep Sys., Inc., 874 F.2d 95, 101 (2d Cir. 1989), the parties have presented little admissible evidence of the status of the PTO review of plaintiff's marks. Moreover, any determinations are preliminary and appear to be for the design logos submitted by Tiny Tots rather than standard word marks. Cf. Time, 173 F.3d at 118 ("[T]he law of trademark accords stronger protection to the stylized version of certain words used as trademarks than to those words themselves."). The apparent vacillation of the PTO examiner in regard to Tiny Tot's submissions, see supra note 3, only serves to confirm the Court's reluctance to premise its ruling on these preliminary determinations.

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120. Defendants are correct that to "procure" registration means to obtain registration, not merely to apply for registration. See Country Mut. Ins. Co. v. Am. Farm Bureau, 876 F.2d 599, 600-01 (7th Cir. 1989) (dismissing claim as unripe); Dun Computer Corp. v. Loudcloud, Inc., 133 F. Supp. 2d 823, 831 (N.D. Va. 2003) (dismissing for failure to state a claim); Bernard v. Commerce Drug Co., 774 F. Supp. 103, 109 (E.D.N.Y. 1991) (granting judgment on pleadings). This reading of the statute makes good sense from a policy perspective, as it interprets the Lanham Act as "send[ing] disputants to an agency that may resolve the problem or provide valuable information" prior to the initiation of a lawsuit. Country Mutual, 876 F.2d at 601.

Plaintiff cites no law stating a contrary view. The one case it does cite, Citigroup, Inc. v. City Holding Co., No. 99 Civ. 10115 (RWS), 2003 WL 282202 (S.D.N.Y. Feb. 10, 2003), merely notes that the pending applications at issue have been abandoned and that plaintiff's fraudulent registration claim is therefore moot. Id. at *16. Because plaintiff's fraudulent registration claim was unripe when brought and is now likely moot, considering defendants' representation that they have withdrawn their applications for trademark registration, summary judgment is granted for defendants.

C.  The State Law Deceptive Business Practices Claim

Defendants argue that Tiny Tot has made no showing that defendants' conduct has harmed consumers at large and that Tiny Tot's claim under Section 349 of the New York General Business Law must be dismissed.  Section 349 provides, in relevant part: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. L. § 349 (a).  A party bringing a claim under Section 349 must show that: "(1) defendant engaged in a consumer-oriented act, (2) that the consumer-oriented act was misleading in a material way, and (3) that plaintiff consequently suffered injury."  GTFM, Inc. v. Solid Clothing, Inc., 215 F. Supp. 2d 273, 301-02 (S.D.N.Y. 2002) (citing Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000)). "Whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances."  Stutman, 95 N.Y.2d at 29 (citation omitted).  "[A] plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm."  Id. So long as there is harm to the "public at large," a competitor may recover under the statute.  Boule v. Hutton, 328 F.3d 84, 94 (2d Cir. 2003); see also GTFM, 215 F. Supp. 2d at 302 (finding in favor of a plaintiff who had sued a competitor for trademark infringement and other violations).

Defendants are correct that plaintiff must establish that there has been harm to consumers in order to state a claim under

13

Section 349. Here, Tiny Tot has presented no evidence of harm to the "public at large." It has presented no evidence that defendants sold videos using the Baby Marks, or that defendants even took actual orders from retailers for videos using the Baby Marks. The cases cited by plaintiff, including GTFM, 215 F. Supp. 2d 273; Vitabiotics, Ltd. v. Krupka, 606 F. Supp 779, 785 (S.D.N.Y. 2004); Capitol Records, Inc. v. Wings Digital Corp., 218 F. Supp. 2d 280, 286 (E.D.N.Y. 2002); and Francis S. Denney, Inc. v. I.S. Labs., 737 F. Supp. 247 (S.D.N.Y. 1990), all involve actual sales by defendants of similar products. Summary judgment is accordingly granted for defendants.

D. Plaintiff's Rule 56(f) Argument

Tiny Tot argues that consideration of defendants' motion should be denied on the basis that "very little discovery has been conducted." It complains that defendants, as of the date Tiny Tot's opposition was filed, had produced only twenty-three documents. While this argument has no impact on plaintiff's Lanham Act Section 43(a) and fraudulent registration claims, it could have implications for its state-law unfair competition claim.[8]

As noted above, discovery in this case closed on February 25, 2005, as per the original scheduling order. Plaintiff's motion to reopen discovery, filed on May 7, 2005, was denied,

---

[8] It likely would not, however, as counsel for defendants represented to the Court at the May 24, 2005 conference that defendants had made no sales using the Baby Marks.

14

subject to rulings made by the Court at the May 24, 2005 conference. A party facing a motion for summary judgment may make a showing under Rule 56(f), Fed. R. Civ. P., that more discovery is needed for it to have an adequate opportunity to present facts that could defeat the motion. See <u>Miller v. Wolpoff & Abramson, L.L.P</u>., 321 F.3d 292, 303 (2d Cir. 2003). A party's failure to conduct adequate discovery during the discovery period, or to seek the court's assistance during the discovery period in the event an opponent fails to comply with timely discovery requests, is not an adequate basis for granting further discovery under Rule 56(f). Plaintiff's request for deferral of decision on defendants' summary judgment motion is denied.

II. Motion for Sanctions and an Order of Civil Contempt, Damages, and Attorneys' Fees

As noted above, on February 17, 2005, a TRO was issued barring defendants and a third party named Brainy Baby[9] from using the Baby Marks. The marks nevertheless appeared on Sporty Baby's website until the following evening; in a press release promoting "Sporty Baby Golf," "Sporty Baby Baseball," and "Sporty Baby Soccer" distributed to a handful of people at the Toy Fair before noon on February 20, 2005, the first day of the event, at which point defendants replaced it with a non-offending press

---

[9] As noted <u>supra</u> note 1, Brainy Baby is under the same management or control as Sporty Baby.

15

release; on Brainy Baby's website until February 28, 2005; and on a third-party website, www.bigkids.com, until March 28, 2005. Tiny Tot has moved for sanctions, an order of civil contempt, damages, and attorneys' fees against defendants.

In addition to coercing future compliance, a goal not applicable here, civil contempt sanctions may be used "to remedy any harm past noncompliance caused the other party." Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996). This "compensatory" goal of civil contempt "can only be met by awarding to the plaintiff any proven damages," in addition to attorneys' fees and costs. Id. "[W]hile willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them." Id. (footnote omitted). That summary judgment has been rendered for defendants on plaintiff's claims is of no consequence to this determination, as the terms of the TRO were clear and definite and bound the defendants while the TRO was in effect.

Defendants corrected each violation promptly once it was reported to them. Plaintiff is correct, however, that defendants bore the burden of compliance and should have actively worked to assure full compliance with the Order. An award of damages, if any can be proven, and reasonable attorneys' fees and costs shall therefore be granted to compensate plaintiff for its efforts to halt the use of the marks in the Toy Fair press release and on the Brainy Baby website. Defendants were well aware that the Order was issued in contemplation of the upcoming Toy Fair and

should have vetted all the materials to be distributed at the event. Moreover, there is no explanation for the Baby Marks' presence on the Brainy Baby website more than a week after the Order was issued, as Brainy Baby should have searched the site promptly; that Brainy Baby claims to have been unaware of the marks' presence on its site is of no consequence.

No sanctions shall be awarded, however, for the lingering presence of the marks on Sporty Baby's website less than twenty-four hours after the TRO was issued, as the Court is satisfied that the defendants were diligent in attempting to achieve compliance by contacting the third-party web host. Nor will damages, fees, or costs be awarded for plaintiff's attempts to enforce the TRO against a third party, the website of which was not under the control of any of the parties under the TRO.

Conclusion

Summary judgment is granted for defendants on all claims, and the Temporary Restraining Order is lifted. Tiny Tot's motion for contempt sanctions is granted in part. Tiny Tot's motion to amend the complaint is denied.

SO ORDERED:
Dated:    New York, New York
          August 24, 2005

_____
DENISE COTE
United States District Judge